UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA          :

      -v-                              :     14 Cr. 446 (VEC)

**EFRAIN RODRIGUEZ**                :

      Defendant.                        :

------------------------------------------------------X

## DEFENDANT'S SENTENCING MEMORANDUM

        Federal Defenders of New York
        Attorney for Defendant
        **Efrain Rodriguez**
        52 Duane Street - 10th Floor
        New York, NY 10007
        Tel. (212) 417-8718

        **Mark B. Gombiner, Esq.**
        Of Counsel

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

October 27, 2014

Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
United States Courthouse
40 Centre Street, Room 240
New York, New York 10007

Re:   **United States v. Efrain Rodriguez**
           **14 CR. 446 (VEC)**

Your Honor:

Efrain Rodriguez is scheduled to be sentenced by the Court on November 3, 2014, following his plea of guilty to one count of being a felon in possession of a firearm in violation of Title 18, U.S.C. § 922(g). The Probation Office Presentence Report (PSR) calculates that Mr. Rodriguez has a sentencing guideline range of 77-96 months, based on an Adjusted Offense Level of 21 and a Criminal History Category of VI. The Probation Office recommends a downward variance to a term of 60 months imprisonment and two years of supervised release with mandated drug treatment and mental health counseling.

Mr .Rodriguez suffers from serious mental illness and severe drug addiction. These twin problems have plagued his life since he was a teen-ager. Now 42 years old, he has been HIV positive since 2008. Mr. Rodriguez's criminal history is, of course, inextricably intertwined with his drug abuse and psychiatric difficulties. Indeed, the instant offense is just the latest manifestation of these root causes.

Since being taken into federal custody in June of this year, Mr. Rodriguez's condition has already improved. He is regularly taking medication for his psychiatric issues and is drug-free. From counsel's own observations, he seems significantly more alert and less depressed than when he was first appeared on this case.

We urge the Court to impose a prison sentence slightly shorter than that recommended by the Probation Office coupled with a lengthier and more intensive term of supervised release. We recommend a sentence of 36 months imprisonment and a three year term of supervised release with special conditions that include a substantial in-patient drug treatment program and

mandated mental health treatment. Although Mr. Rodriguez has a very troubled past, he seems capable of responding to treatment. A shorter term of incarceration coupled with effective and intensive assistance once he is on supervised release would constitute a sentence that is "sufficient, but not greater than necessary" to fulfill the statutory objectives of sentencing. Title 18, U.S.C. §3553(a).

## STATEMENT OF FACTS

### Early Years

Efrain Rodriguez's early years were marred by the traumatic early loss of both his mother and father. Efrain was born in Puerto Rico in 1972 to Efrain Rodriguez Vega and Aida Iris Caban Suarez.

When Efrain was just eight years old, his father was murdered. His sudden, violent death deeply distressed Efrain. For most of his childhood, Efrain lived with his mother and his stepfather, Junior Laboy. Although Efrain's parents met his material needs, Efrain struggled in school. Part of his problems, he believes, were related to his father's early demise.

When Efrain was fifteen, his mother unexpectedly passed away as the result of a heart attack. His mother's death shattered Efrain. He vividly recalls that on the same day that she died, he sought to numb himself into insensibility by injecting and snorting heroin and cocaine–both for the first time.

Two months after his mother died, Efrain left his stepfather and moved in with one of his maternal aunts, Teresa Caban. Soon, thereafter, he left Puerto Rico for California, where he lived with another of his mother's sisters.

Efrain briefly attended high school in Sunnyvale, California, but his drug use soon led him to discontinue his education. PSR, par. 66

### Drug Use and Criminal History

Since the age of 15, Mr. Rodriguez has been overwhelmed by an unhappy combination of a ferocious addiction to drugs linked with numerous arrests and convictions for possession of narcotics, petty thefts, burglaries, and other drug-related offenses.

**Re:**	**United States v. Efrain Rodriguez**
	**14 CR. 446 (VEC)**

Mr. Rodriguez began using heroin and cocaine at the age of 15. For much of his life (at least when not in jail) he has used both of these drugs almost daily. He has also abused a wide variety of other narcotics, including marijuana, Ecstasy, PCP and methamphetamines.

As he himself recognizes, Mr. Rodriguez's drug addiction has destroyed any prospects for a happy or productive life. PSR, par. 65. The few relationships Mr. Rodriguez has formed have withered away as the result of his need for narcotics. For example, shortly after arriving in California, Mr. Rodriguez began a relationship with Yvonne Martinez Vigo. The couple had a child. However, the relationship soon dissolved because of "jail and drugs." Mr. Rodriguez's other relationships have met a similar fate. As a result, although Mr. Rodriguez has three children, he has not had any recent contact with either them and/or their mothers. PSR, pars. 55-56.

Mr. Rodriguez's drug use also plunged him into a life of crimes, largely committed so that he could obtain drugs for himself. Between 1993 and 2013, Mr. Rodriguez has been arrested on dozens of occasions and convicted of at least seventeen offenses in both New York and California. PSR, pars. 23-51. The vast majority of Mr. Rodriguez's offenses involve either possessing and/or selling small amounts of drugs or petty theft and burglary offenses.

**Physical and Mental Health**

In 2008, Mr. Rodriguez entered St. Barnabas Hospital for a detoxification program. He learned that he had become HIV positive. Although Mr. Rodriguez is not sure how he contracted the disease, his extensive drug use is an obvious candidate. Since being diagnosed with HIV, Mr. Rodriguez has been taking a variety of drugs for the condition, including Tenofovir, Norvin, and Renovir. At present, his T-cell count is reportedly "good" and he does not feel ill. PSR, par. 61.

Mr. Rodriguez has received only minimal help with his drug addiction. During his years in California, he did not get any assistance for his drug abuse issues. Since coming to New York, he has only participated in two residential programs. He was discharged from both well before the prescribed length of treatment. PSR, par. 64.

Besides his drug addiction, Mr. Rodriguez has struggled with mental health issues. In 2003, while incarcerated in California, he reported feelings of depression and was prescribed anti-depressants. Unfortunately, he discontinued his mental health treatment once release from

Honorable Valerie E. Caproni
United States District Judge
Southern District of New York

Page 4

Re: United States v. Efrain Rodriguez
14 CR. 446 (VEC)

custody. Since being incarcerated on this case, Mr. Rodriguez has again been identified as suffering from depression. He is currently taking Wellbutrin and Trazadone to combat his depression and believes that the drugs have substantially helped him. PSR, par. 62.

**Circumstances at Time of Arrest**

At the time of his arrest, Mr. Rodriguez was single and not involved in any relationship. He was receiving some financial benefits from the New York City HIV/AIDS Service Administration (HASA) and living in a small studio apartment in the Bronx. Mr. Rodriguez was heavily abusing drugs at the time of his arrest.

**Offense Conduct**

On May 16, 2014, New York City police officers saw Mr. Rodriguez looking into the windows of parked cars. He was holding a bag in his hand. The officers approached Mr. Rodriguez to ask him what he was doing. As they neared him, Mr. Rodriguez held out the bag and told the officers "I have a gun in the bag." Mr. Rodriguez was placed under arrest and a .32 caliber semi-automatic pistol was found in the bag. Mr. Rodriguez was also in possession of a small amount of cocaine and a hypodermic needle. He was in very poor physical condition and the arrest report for him notes "odor" as an identifying characteristic.

**Sentencing Guideline Calculations**

Mr. Rodriguez has 13 criminal history points, placing him in Criminal History Category VI. PSR, pars. 40-41. Because Mr. Rodriguez has at least two prior felony convictions for a crime of violence or controlled substance offense, his base offense level is 24, pursuant to U.S.S.G. § 2K2.1(a)(2). The offense level is reduced by three levels because he timely accepted responsibility for his offense. U.S.S.G §§ 3E1.1 (a) and (b). The Adjusted Offense Level of 21 and Criminal History Category of VI yields a sentencing guideline range of 77-96 months.

ARGUMENT

THE MOST APPROPRIATE SENTENCE FOR MR. RODRIGUEZ WOULD COMBINE A RELATIVELY MODEST TERM OF INCARCERATION WITH CONDITIONS OF SUPERVISED RELEASE THAT INCLUDE A LENGTHY IN-PATIENT DRUG TREATMENT PROGRAM AND INTENSIVE MENTAL HEALTH COUNSELING

Re:   **United States v. Efrain Rodriguez**
      **14 CR. 446 (VEC)**

Since the age of 15, Mr. Rodriguez has been drowning in a sea of drugs and attendant criminal behavior. His arrest and conviction in this case is simply the latest iteration of the problems that have plagued him for more than 25 years. When he was taken into custody, Mr. Rodriguez was scanning parked cars looking for something easy to steal. He was high on drugs and had two glassine envelopes of cocaine and a hypodermic needle in his possession. He had no job, no relationships, and was surviving on aid provided to persons who are HIV positive.

Mr. Rodriguez has spent his whole life repeating the pattern in this case. His existence has centered almost exclusively on using drugs and committing crimes and going to jail. Without denying the seriousness of the offense conduct, it is time to recognize that something more than just another prison sentence is required.

Mr. Rodriguez's drug addiction, his HIV positive status, and his diagnosed depression require a comprehensive and intensive course of treatment. He needs to be in a place where he is both monitored and receiving real treatment for his constellation of problems. Although it is not easy to find such a setting, a sentence that requires the Probation Office to find one makes much more sense than simply yet another jail term without adequate after-care.

Recognizing Mr. Rodriguez's issues, the Probation Office recommends a downward variance to 60 months to be followed by a two year term of supervised release. The Probation Office also recommends special conditions of mental health counseling and drug treatment.

Although it is in the right spirit, a sentence that included less time in prison, but a lengthier term of supervised release with more stringent conditions would better effect the statutory goals of sentencing. We would urge the Court to sentence Mr. Rodriguez to 36 months of imprisonment to be followed by a three year term of supervised release with the special condition that the first year be spent in a residential drug-treatment program. We concur in the recommendation of the Probation Office that participation in mental health treatment also be ordered as a condition of supervised release. Such a sentence would adequately punish the instant conduct while also recognizing the root causes of Mr. Rodriguez's conduct. The proposed sentence offers some hope that Mr. Rodriguez can change sufficiently as to lead to a lifestyle that promotes his own well-being while also assuring the safety of the community.

## CONCLUSION

For the foregoing reasons, we urge the Court to impose a sentence of 36 months of

imprisonment, to be followed by a three year term of supervised release that includes special conditions of in-patient drug treatment and mental health counseling.

　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　Mark B. Gombiner, Esq.
　　　　　　　　　　　　　　　　　　　　　Attorney for Efrain Rodriguez
　　　　　　　　　　　　　　　　　　　　　Tel. (212) 417-8718

cc: A.U.S.A. Patrick Egan