

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 28, 2014

**BY ECF**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:      United States v. Efrain Rodriguez
                14 Cr. 446 (VEC)

Dear Judge Caproni,

      The defendant is scheduled to be sentenced in the above-captioned case on November 3, 2014, at 4:30 p.m. The Government respectfully submits this letter in connection with that sentencing and in response to the defendant's sentencing memorandum ("Def. Mem."), which was filed on October 27, 2014. The Government respectfully requests that the Court impose a sentence with the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 77 to 96 months. Such a sentence would be sufficient, but no greater than is necessary, to achieve just punishment for the defendant's crime, to promote respect for the law, and to deter this defendant and others similarly situated from committing similar crimes.

## BACKGROUND

**A.**     **Offense Conduct**

      As described in the Presentence Investigation Report ("PSR"), on or about May 16, 2014, two officers from the 48th Precinct in the Bronx were on routine patrol when they saw the defendant peering into the windows of parked cars in the vicinity of Marmion Avenue and Fairmont Place. PSR ¶ 6. The stopped their car to investigate. As the officers approached the defendant, he began backing away and held up a bag that he had in his hand. Id. The defendant then explained to the officers that he had a firearm in the bag. Id. The officers secured the bag and recovered a .32 Davis Industries semi-automatic pistol from inside. Id. The defendant was then placed under arrest. Id. Subsequent investigation revealed that the gun had moved in interstate commerce.

B.  **Defendant's Adjusted Offense Level**

The Government's position with respect to the appropriate offense level is the same as that contained in the PSR. The base offense level is 24 because the defendant committed the instant offense after sustaining two felony convictions for either a crime of violence or a controlled substance offense. PSR ¶ 10. Given the defendant's acceptance of responsibility and timely notification of his intent to plead guilty, a three-level reduction is warranted, resulting in a total offense level of 21. PSR ¶¶ 17 and 18.

C.  **Defendant's Criminal History Category**

While the PSR and the Government's *Pimentel* letter reach different conclusions as to the defendant's criminal history category, one thing is clear: The defendant has a remarkably extensive criminal past. Since 2000 alone, the defendant has at least 17 different convictions, PSR ¶ 23-39, which range in seriousness from convictions for violations like Disorderly Conduct, PSR ¶ 29, to serious felonies such as robbery. PSR ¶ 34. The only difference between the two calculations comes from the Government's failure to account for the fact that the defendant was *re*-sentenced to 16 months' imprisonment as a result of his conviction on or about February 22, 2000. As a result of that re-sentencing, three criminal history points should be assessed. PSR ¶ 23.[1] The addition of these three points results in a total of 13 criminal history points and a Criminal History Category VI. PSR ¶¶ 40, 41.

Accordingly, the defendant's Guidelines range is 77 to 96 months of imprisonment based on the offense level described above. PSR ¶ 75.

D.  **The Probation Office Recommendation**

Probation recommends a sentence of 60 months of imprisonment, which represents a downward variance from the Guidelines range. In addition, they recommend two years of supervised release and a $100 special assessment. Probation does not offer a specific rationale for the variance but notes the defendant's HIV diagnosis and his chronic depression in the section discussing their recommendation. PSR at 18-19.

## DISCUSSION

A.  **Applicable Law**

The United States Sentencing Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines

---

[1] Based on the defendant's initial sentence of 10 months' imprisonment, the Government assessed no criminal history points as a result of this conviction in its *Pimentel* letter. Pursuant to U.S.S.G. § 4A1.2(k)(1), three criminal history points should have been assessed.

and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

   (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)    to afford adequate deterrence to criminal conduct;

   (C)    to protect the public from further crimes of the defendant; and

   (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**B.    Analysis**

There is no question that this offense is a serious one. The statute the defendant violated – 18 U.S.C. § 922(g) – reflects Congress's belief that firearms in the hands of felons represent a particular danger that communities need not tolerate. The structure of the Guidelines underscores this point and expands upon it by providing increased offense levels for offenders previously convicted specific prior crimes – crimes of violence and drug offenses – where that danger seems particularly acute. *See* U.S.S.G. § 2K2.1. Amongst this defendant's veritable laundry list of convictions are both prior violent crimes and drug crimes so, in that respect, the increased Guidelines offense level appropriately reflects the policy concerns at the heart of both the statute and the relevant Guideline.

A Guidelines sentence would also send a powerful deterrent message to the defendant and others similarly situated, as well as promote respect for the law. As mentioned above, Congress has specifically determined that people with prior felony convictions should be not allowed to own firearms that have travelled in interstate commerce. The defendant decided to do

so anyway, notwithstanding his numerous felony convictions.  Furthermore, Probation notes that this defendant has *never* successfully completed any of the terms of community supervision to which he has been sentenced.  PSR at 18.  This, when combined with his near constant criminal conduct over the course of the last two decades, unquestionably demonstrates a "lack of respect for the criminal justice system."  PSR ¶ 19.  This is precisely the type of thing that 18 U.S.C. § 3553(a) asks the Court to consider when fashioning a sentence.

The Government concedes that many of the defendant's criminal convictions seem to be corroborative of the long struggle with drug addiction that defense counsel notes in his submission. Def. Mem. at 2-3.  The Government respectfully submits, however, that acknowledging this sad reality does not, in any way, diminish the threat that the defendant represents to society.  An individual, without the ability to control his criminal impulses, who is simultaneously addicted to drugs *and* who is armed represents a grave threat indeed.  He has been given numerous second (and third, and fourth) chances in the form of short jail sentences or sentences to community supervision and he has failed in each instance.  At some point, society is no longer required to take keep taking chances.  A Guideline sentence would let the defendant know that such flagrant disregard for the law will not be tolerated.

## **CONCLUSION**

The Government respectfully submits that a Guideline sentence would be sufficient, but no greater than is necessary, to achieve just punishment for the defendant's crime, to promote respect for the law, and to deter this defendant and others similarly situated from committing similar crimes.

    Very truly yours,

    PREET BHARARA
    United States Attorney

By: _____
    Patrick Egan
    Assistant United States Attorney
    (212) 637-2345

cc:    Mark B. Gombiner, Esq. (via ECF)