```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

            v.                       14 Cr. 446(VEC)

EFRAIN RODRIGUEZ,

            Defendant.

------------------------------x
                                     New York, N.Y.
                                     November 3, 2014
                                     4:30 p.m.

Before:

            HON. VALERIE E. CAPRONI,

                                     District Judge

                      APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
PATRICK EGAN
    Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK
    Attorney for Defendant
MARK B. GOMBINER

ALSO PRESENT: UMBERTO GARCIA, Spanish Interpreter
```

          (Case called)

          THE DEPUTY CLERK: United States of America v. Efrain Rodriguez with the Spanish interpreter Umberto Garcia.

          All counsel identify yourselves for the record.

          MR. EGAN: Patrick Egan for the government.

          THE COURT: Good afternoon, Mr. Egan.

          MR. GOMBINER: Mark Gombiner, Federal Defenders for Mr. Rodriguez.

          THE COURT: Good afternoon, Mr. Gombiner. Good afternoon, Mr. Rodriguez. You can be seated.

          Mr. Rodriguez, have you and your attorney had an opportunity to read the presentence report? It's dated October 21, 2014.

          Mr. Gombiner, have you had an opportunity to read it?

          THE DEFENDANT: Yes.

          MR. GOMBINER: Yes, we did.

          THE COURT: Has Mr. Rodriguez read it or had it read to him?

          MR. GOMBINER: Yes, he has, Judge.

          THE DEFENDANT: Yes.

          THE COURT: Have you had an opportunity to discuss it with each other?

          MR. GOMBINER: Yes, Judge.

          THE DEFENDANT: Yes.

          THE COURT: Are there any objections to the report?

Eb3grods

|   |   |
|---|---|
| 1 | MR. GOMBINER:  We don't have any factual objections, |
| 2 | Judge. |
| 3 | THE COURT:  The presentence report will be made part |
| 4 | of the record in this matter and placed under seal.  If an |
| 5 | appeal is taken, counsel on appeal may have access to the |
| 6 | sealed report without further application. |
| 7 | I have received submissions from both the defense and |
| 8 | the government. |
| 9 | Mr. Egan, did you file your submission with the Court? |
| 10 | MR. EGAN:  Yes, I did. |
| 11 | THE COURT:  Mr. Gombiner, was yours filed as well? |
| 12 | MR. GOMBINER:  If the procedures were followed, I |
| 13 | believe it was, Judge.  I hope so. |
| 14 | THE COURT:  Could you verify that, please. |
| 15 | MR. GOMBINER:  You mean rather than just filing it on |
| 16 | ECF? |
| 17 | THE COURT:  ECF is fine. |
| 18 | MR. GOMBINER:  It was filed on ECF, yes.  I will |
| 19 | verify it was filed on ECF. |
| 20 | THE COURT:  If it was filed on ECF, you're okay. |
| 21 | Let me begin by going through the guideline |
| 22 | calculation to make sure that we're all on the same page. |
| 23 | The presentence report reflects that there is an |
| 24 | adjusted guidelines level of 21 with a Criminal History |
| 25 | Category of VI.  I find that the correct guidelines calculation |

1  is that we start with a base offense level of 24 and it's 24
2  because Mr. Rodriguez has two prior drug or crimes of violence
3  convictions; there are three levels down for acceptance of
4  responsibility; adding to an adjusted guidelines level of 21.
5  Mr. Rodriguez has ten Criminal History points, which leads to a
6  Criminal History Category VI, and that's a guidelines range of
7  77 to 96 months.
8      Do the parties agree that that is the correct
9  guidelines calculation?
10     Mr. Egan.
11     MR. EGAN:  One moment, your Honor.  I think if I can
12 have just one second.
13     I believe the PSR calculates the criminal history
14 points as 13 points.  The government had initially calculated
15 it as ten.  We put a footnote in our sentencing submission
16 based on erroneously I saw a ten-month sentence put in there,
17 and it would have timed out because it wouldn't have been a
18 three-point.  But because he was subsequently resentenced to 16
19 months as a violation of probation on that count, it's my
20 understanding that under the guidelines, that then counts as a
21 16-month sentence of imprisonment, and that would then be
22 within the 15-year time period.  So I believe that sentence now
23 counts as 13 and the PSR calculated it as that.
24     THE COURT:  You're right.  My apologies.  It's 13
25 criminal history points, Category VI.

1          MR. EGAN:  That's what I have, your Honor.
2          THE COURT:  Mr. Gombiner, do you concur that that is
3     the correct calculation?
4          MR. GOMBINER:  As a calculation, it's correct, Judge.
5          THE COURT:  Are there any guidelines arguments that
6     the parties wish to advance at this point that weren't
7     precluded by the plea agreement?
8          Mr. Gombiner.
9          MR. GOMBINER:  No, we don't have any guidelines
10    arguments.
11         THE COURT:  I don't see any grounds for a departure
12    either upward or downward.
13         Are there any factual disputes over issues or facts
14    that are contained in the presentence report?
15         Mr. Gombiner.
16         MR. GOMBINER:  We don't have any factual disputes, no.
17         THE COURT:  Mr. Egan.
18         MR. EGAN:  No, your Honor.
19         THE COURT:  Does the government wish to be heard on
20    sentence?
21         MR. EGAN:  The government will rely primarily on its
22    sentencing submission.  As we said in that submission, I think
23    a guidelines sentence is appropriate in this case.
24         The defendant's criminal history speaks for itself.
25    It is extremely extensive.  And while the government notes that

certainly the criminal history, the nature of many of those convictions are indicative of a serious substance abuse problem, I think it would be hard looking at the facts of this case to say otherwise; but from the government's point of view, that isn't necessarily a fact in mitigation, that someone with a serious substance abuse problem who is also a prior felon that's in possession of a firearm is certainly a grave danger to the community.

He has been given a number of probationary sentences and second chances and third chances, and as a result of all of that, I think a guideline sentence is appropriate in this case.

THE COURT: Let me ask you this because I read the government's submission and you refer to him as having an extensive and violent history. I was sort of struck in reviewing the PSR that what he doesn't actually have is much of a history of violence, and actually no history of gun violence.

I see, if you look at page five of the PSR, 14 years ago, he had a misdemeanor battery conviction in 2000. Then in 2001, he was arrested in possession of a dirk and dagger. I'm not entirely sure what a dirk and dagger is. I know what a dagger is, but I don't know what a dirk is.

MR. GOMBINER: I think they're primarily the same thing, Judge.

THE COURT: That would seem to be a weapon of some description, although the crime does not include any use of the

weapon. It appears to be just a possession of the weapon.

Then the next crime that has any suggestion of violence with it came in 2009 when he has an attempted robbery in the third degree. The description is he attempted to forcibly steal property from a complainant. I'm not entirely clear what that is, but attempted robbery in the third degree suggests maybe something like a purse-snatching or something along those lines.

Then the only other indicia of violence in his record is when he was in jail in Santa Clara in 2001 when there was an assault by a prisoner which prosecution was rejected on, so I'm a little unclear on what happened there.

Am I missing something in terms of a history of violence in connection with Mr. Rodriguez?

MR. EGAN: I was looking through my submission, too. I certainly refer to that he had both violent crimes and drug crimes. I didn't believe, and I could be wrong, that I described him as a serial, violent offender.

The crimes of violence, particularly the robbery -- there is a burglary on there, but we don't have any facts of that and I don't know how California treats that. I know under New York State law, that is regarded as a violent felony because of the potential for violence that any sort of burglary brings, but we don't have facts on this case.

The government would readily concede that particularly

in the realm of people with criminal histories this long, in the grand scheme of things, this is not in the upper echelon of violent offenders that we see. This is mostly a history of drug crimes and theft offenses, and the robbery is even a theft offense, obviously.

Whether it is a purse-snatching, we don't know if this ends up as a robbery in the third degree as a result of a plea, but it certainly represents an escalation. If you go from petty larceny, presumably a shoplift or stealing something out of someone's car, something like that, to a robbery, that represents an escalation.

I did not mean to and I'm certainly not here representing that Mr. Rodriguez is someone who the government would pound the table and say this is a violent criminal. He has violence on his record, but I agree with the Court's representation as to the extent of that violence.

THE COURT: You have indicated the government thinks that a guidelines sentence would be appropriate.

Would the government also agree that a sentence below the guideline range in this case might also be appropriate?

MR. EGAN: I think there are a number of sentences that could be appropriate. It's the government's position that a guideline sentence would meet the appropriate ends of sentencing, but I certainly wouldn't state that that's the only appropriate sentence.

1    THE COURT: Thank you.

2    Mr. Gombiner, do you wish to be heard?

3    MR. GOMBINER: Yes. This is a case where it's pretty
4 glaringly apparent from Mr. Rodriguez's criminal record and
5 from the rest of the history set forth in the presentence
6 report and summarized in our letter that basically
7 Mr. Rodriguez has a terrible problem with drugs. And it seemed
8 to have begun -- I can't say it began, but it certainly
9 dramatically escalated when he was quite young when his mother
10 died somewhat suddenly. Obviously, most people's reaction to
11 their mother dying is not to become a drug addict, but
12 unfortunately, in Mr. Rodriguez's case, it is what seems like
13 what happened.

14    As a result, he has spent really his entire life
15 essentially committing, it's not a history of violent crimes.
16 He's committing basically property crimes and low-level drug
17 offenses which are all related to his endemic and pervasive
18 drug use. He's basically been in a cycle of getting arrested
19 for crimes, going to jail, getting out, using more drugs and
20 going back to jail. Unfortunately, probably as a result of
21 that, Mr. Rodriguez is now also HIV positive, so he's got a
22 very serious health issue as well. He's also been taking
23 antidepressants since he's at least been incarcerated.

24    I do have to say that Mr. Rodriguez seems to me to be
25 a much more alert person and more capable of reflecting on

things than he was the day I first encountered him in magistrate court. I think Mr. Rodriguez has benefited in fact from being in a more structured setting. His life was clearly a complete mess on the day he was arrested for this offense.

What I think would be the appropriate sentence in this case and one that would serve everyone's interest, not just Mr. Rodriguez', recognizing that he's going to get some time for this, and we're not suggesting he's going to get time served, but I think a sentence that would be less focused on how many years in prison he has to do and more focused on some intensive supervised release, which probation recommended two years. I actually think three years would be more appropriate. And that's the maximum term; that would be a more appropriate term. I think part of that term should include - and I discussed this with Mr. Rodriguez and he agrees with me - a condition of some extended inpatient drug treatment program.

It's hard to guarantee any miracles with anything. I've been disappointed before the way some cases have turned out, but I've also been pleasantly surprised the way some cases have turned out. I think this is a situation where a sentence could actually do some good. I don't think he needs anything approaching 77 to 96 months. I think that's far too long, particularly given his health issues.

A substantially shorter sentence, that coupled with real terms of supervised release, I think that would achieve

all of the statutory goals of sentencing and that would be in the best interest of Mr. Rodriguez and it would be in the best interest of everyone else, too, so I would urge the Court to impose such a sentence.

THE COURT: Thank you.

You may or may not be willing to answer this question, but I have a question, and that is, can you tell me why Mr. Rodriguez had a gun that day?

He has no gun history. It's an explanation that would be helpful.

MR. GOMBINER: I'm not sure even Mr. Rodriguez can tell you all that well. I can't give you really an absolutely complete answer. I think it was sort of an accidental kind of circumstance. He was looking in the windows of cars I think intending to --

THE COURT: I assume he was going to break into the car.

MR. GOMBINER: Yes. You don't need a gun to do that. Judge, just the whole gestalt that comes through even from the arrest reports in this case and the way that Mr. Rodriguez appeared in court when I saw him suggests someone who was pretty much out of things in general. To hang around that kind of a world, a gun might come into your possession at some point. He wasn't planning to rob a bank or be some hitman for the mob or something like that. It definitely was not anything

1 like that.
2 	I think it was probably just one of the things that
3 happens when you're stumbling around in the world of
4 intoxicants and opiates. I think that's pretty much what it
5 was, but that may not have been the most precise answer, but
6 that's about as good as I can do.
7 	THE COURT: Thank you.
8 	Mr. Rodriguez, do you wish to be heard?
9 	THE DEFENDANT: Yes. May I?
10 	THE COURT: You may.
11 	THE DEFENDANT: First of all, good afternoon.
12 	THE COURT: Good afternoon.
13 	THE DEFENDANT: I know I had several problems during
14 my youth, a drug problem. I accept my mistakes, and once I
15 receive my sentence, once I'm released under supervision, I
16 would like to do things the right way and undergo treatment.
17 And that's it.
18 	Thank you.
19 	THE COURT: Mr. Rodriguez, do you want to get your
20 drug problem under control?
21 	THE DEFENDANT: Yes.
22 	THE COURT: Do you think you can?
23 	THE DEFENDANT: Yes.
24 	THE COURT: You have walked away from drug treatment
25 before.

1           THE DEFENDANT:  Yes.

2           THE COURT:  Why do you think this time is going to be
3    different?

4           THE DEFENDANT:  Because I feel like I've made too many
5    mistakes now in my life.  I am 42 years old now, and that makes
6    me want to do positive things in life and change my life;
7    because I found out that I was HIV positive in 2008 and I would
8    like to change my life and be able to see my children once I'm
9    released.  Yes.

10          Thank you.

11          THE COURT:  The sentencing factors under federal law
12   require me to consider the nature and circumstances of the
13   offense and the history and characteristics of the defendant.

14          The sentence I'm required to impose has to be
15   sufficient but no greater than necessary to reflect the
16   seriousness of the crime, promote respect for law, and provide
17   just punishment for the offense.

18          The sentence should provide both general deterrence to
19   others and a specific deterrence to Mr. Rodriguez.  The
20   sentence should also protect society from future crimes from
21   Mr. Rodriguez, but should also provide him with education,
22   medical care, vocational training in the most effective manner.

23          As I think you might have detected from my question to
24   your attorney, I'm still puzzled about why you had a gun
25   because you just had no history of dealing with a gun.  And it

1  worries me that you had a gun because that makes me think that
2  perhaps you were on a trajectory to engage in worse crimes and
3  more violent crimes than you had historically.
4  　　　　All of that said, when I'm looking at this case, it
5  seems to me that the defendant, looking at the defendant
6  himself, Mr. Rodriguez as an individual, that his criminal
7  history really overstates the severity of his criminal past.  I
8  don't want to minimize the crimes, but the truth is, his
9  history is one that appears to be clearly driven by a drug
10 habit and not some sort of base venality.  And one has to
11 wonder that if we had spent more money on drug treatment for
12 Mr. Rodriguez and less on jails, whether, at the age of 42, he
13 would still be addicted to drugs.
14 　　　　That said, the crime is serious, but I'm cognizant of
15 the fact that the gun wasn't used and in fact, he made it
16 pretty clear when the police approached him that he had a gun
17 and he turned it over right away to minimize the risk both to
18 him and to the police officers associated with his possession
19 of the gun.
20 　　　　It seems clear to me that Mr. Rodriguez's biggest
21 problem is that he is a drug addict.  I'm not sure that
22 Mr. Rodriguez really wants to get clean of drugs, but I'm going
23 to accept his representation to me that he does because that's
24 all I can really go on at this point.
25 　　　　Probation has recommended a five-year sentence because

of the defendant's very long history of going in and out of jail and committing crimes when he gets out. The probation officer seems to think that a longer time in jail will make a difference, or thinks that even if it doesn't, at a minimum, he'll be free of drugs during that period of time and we won't be suffering from the criminal conduct of Mr. Rodriguez during that period.

I think in theory that's right, but I'm still struck by the fact that what Mr. Rodriguez's big problem is is not that he's particularly a criminal, but that he's a drug user, so he needs to get clean of drugs.

Taking all of that into account, I'm going to sentence you to the custody of the Attorney General, Mr. Rodriguez, for three years. I think that is long enough for you to get drug treatment in prison. It's long enough for you to maintain a drug-free environment for some period of time. And I'm going to sentence you to the maximum period of supervised release, which is three years.

I promise you if you come back in front of me, I don't want to hear that you're having problems staying clean. If you commit to yourself that you're going to remain drug-free, I think you can do it. I have faith that you can do it.

I'm going to impose a $100 special assessment and no fine because I find that Mr. Rodriguez has no ability to pay.

In terms of the supervised release, I'm going to

1  impose all of the mandatory conditions. So you can't commit a
2  crime. You can't illegally possess a controlled substance or a
3  gun. I'm not going to require mandatory drug testing because
4  I'm going to order you to participate in inpatient drug
5  treatment. You have to cooperate in the collection of DNA as
6  directed by your probation officer.
7  　　　　　I'm going to impose as a special condition of your
8  supervised release inpatient drug treatment. You'll be
9  required to contribute to the cost of that in an amount
10 determined by the probation office based on your ability to
11 pay. I'm also going to impose as a special condition mental
12 health treatment in a program as approved by the probation
13 office. I suspect your depression and your drug abuse all
14 interact with each other, so perhaps once you become really
15 drug-free, that will help with your depression as well.
16 　　　　　As before, as for your drug treatment, the probation
17 officer will determine whether, and to what extent, you're
18 required to contribute to the costs of your mental health
19 treatment.
20 　　　　　Once you are out of inpatient drug treatment, you will
21 be required to submit your person, residence, place of
22 business, vehicle or other premises under your control to
23 search if the probation officer has reason to believe that
24 contraband or evidence of a violation of the conditions of
25 release can be found. Failure to submit to a search can be

grounds for revocation of your special supervision. If you live with others, you have to inform them of this condition.

You'll be required to report to the probation office within 72 hours of your release from prison. I'll recommend that you be supervised in the district of your residence.

Are there any open counts, Mr. Egan?

MR. EGAN: No, your Honor.

THE COURT: Mr. Rodriguez, you have the right to appeal your sentence. If you're unable to pay the cost of your appeal, you may apply for leave to appeal *in forma pauperis*. Any notice of appeal, if you haven't waived it, must be filed within 14 days of the judgment of conviction.

Mr. Gombiner.

MR. GOMBINER: Just one thing. In terms of the inpatient treatment program, maybe if the Court could specify that it should be at least three months in length, because sometimes, they have these 28-day inpatient treatment programs and I'm not sure that's going to work. I think something longer is probably going to be helpful here.

THE COURT: Let me ask you this: Do you think he's going to qualify for the Bureau of Prisons' one-year program, is it C-Pop, or is the sentence too short for that?

MR. GOMBINER: No, I think it's long enough for that. I'm not sure if the gun is going to be a disqualifying thing. I've been wrong about this before, but this Court could

Eb3grods

1  certainly recommend that.
2              THE COURT:  I will recommend it.  I will also
3  recommend that the inpatient drug treatment be of at least
4  three months, regardless of whether he participates in the
5  Bureau of Prisons' program.
6              MR. GOMBINER:  Thank you.  I think that would be
7  helpful.
8              THE COURT:  Mr. Egan, nothing else?
9              MR. EGAN:  Not from the government.
10             THE COURT:  Mr. Gombiner.
11             MR. GOMBINER:  No, Judge.  Thank you very much.
12             THE COURT:  Mr. Rodriguez, good luck.  I hope I never
13 see you again.
14             (Adjourned)
15
16
17
18
19
20
21
22
23
24
25